IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

ROB L. FULFORD,

    Plaintiff,

                                                              No. 17-2581-SHL-dkv

vs.

VOLVO IT NORTH AMERICA
d/b/a VOLVO GROUP TRUCKS OPERATIONS,

    Defendant.

---

ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*
and
REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

---

On August 11, 2017, plaintiff, Rob L. Fulford ("Fulford"), filed a *pro se* complaint against the defendant, Volvo IT North America ("Volvo"), alleging race-discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5. (Compl. ¶ 1, ECF No. 1.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

Accompanying the complaint was a motion seeking leave to proceed *in forma pauperis*. (ECF No. 2.) The information set forth in the affidavit submitted by Fulford satisfies his burden

of demonstrating that he is unable to pay the civil filing fee. *See* 28 U.S.C. §§ 1915(a), 1746. Accordingly, the motion to proceed *in forma pauperis* is GRANTED.

For the reasons that follow, it is recommended that this case be dismissed *sua sponte* for failure to state a claim.

## I. PROPOSED FINDINGS OF FACT

Fulford alleges in his complaint that Volvo discriminated against him based on his race, African-American, and retaliated against him for engaging in protected activity. (Compl. ¶¶ 1-2, ECF No. 1.) Fulford states that he worked for Volvo as a warehouse worker from September 23, 2015, until his termination on June 21, 2017. (*Id*. ¶¶ 9(a), 9(bb); Ex. 1, ECF No. 1-1.) On April 24, 2017, Fulford's supervisor, Robert Buckenham ("Buckenham"), who is African-American, informed Fulford and another employee, Dante Faukner ("Faukner"), who is also African-American, "that they were disrespecting him." (Compl. ¶¶ 9(d)-(f), ECF No. 1; Ex. 1, ECF No. 1-1.) Buckenham then told Fulford that the "gap time" was being enforced against him because he had been "talking for six minutes." (Compl. ¶ 9(g), ECF No. 1.) Fulford states that he filed an internal complaint against Volvo's management and Buckenham on April 24, 2017, because Buckenham "informed [him] and his coworker Dante Faukner that they were disrespecting him" and because Buckenham enforced

2

the gap-time policy against him. (*Id*. ¶ 9(e); Ex. 1, ECF No. 1-1.)[1]

On April 27, 2017, Fulford was issued a Disciplinary Action Report for violating Rule of Conduct 15, which is the "failure to perform job assignment in the prescribed manner; to include making a good faith effort to perform job assignment," and suspended for five days. (Compl. ¶ 9(j), ECF No. 1; Ex. 3 at 5, ECF No. 1-3.) In an Exhibit attached to the complaint, Fulford states that this five-day suspension was issued because of his alleged gap-time violation. (Ex. 3 at 11, ECF No. 1-3.) Fulford alleges that Buckenham suspended him for five days only "'after' he engaged in protected activity when he filed grievances." (Compl. ¶ 9(k), ECF No. 1.)

On May 3, 2017, Fulford filed charges against Volvo with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 9(l), ECF No. 1.) In the EEOC complaint, Fulford alleged race-discrimination and retaliation for "complaining and filing a grievance" about Buckenham's statement that Fulford was disrespecting him, the gap-time violation, and because Keith, another warehouse worker who is also African-American, received overtime and he did not. (Ex. 1, ECF No. 1-1.) The EEOC issued a Notice of Right to Sue on May 11, 2017, which Fulford states

---

[1]Fulford attached a letter to his complaint that he wrote on April 27, 2017, further describing the incident with Buckenham and Faukner. (Ex. 3 at 3-4, ECF No. 1-3.)

he received within five days after the date stamped. (Compl. ¶ 7, ECF No. 1; Ex. 2, ECF No. 1-2.)[2]

On May 5, 2017, Fulford filed a grievance about the five-day suspension, which is attached as Exhibit 3. (Ex. 3 at 11, ECF No. 1-3.) Fulford maintains in this grievance that receiving a five-day suspension for violating the gap-time policy is in violation of the Union Agreement because it was not "written or spelled out in the contract." (Compl. ¶¶ 9(jj)-(kk); Ex. 3 at 11, ECF No. 1-3.)

Fulford was terminated from Volvo on June 21, 2017, and the termination letter he received from Volvo is attached in Exhibit 3. (Compl. ¶ 9(bb); Ex. 3 at 1, ECF No. 1-3.) According to the termination letter, Fulford was suspended on June 9, 2017, pending an investigation into whether he falsified a payroll document. (Ex. 3 at 2, ECF No. 1-3.) Volvo's investigation determined that Fulford filled out a payroll form requesting to

---

[2]Fulford's complaint is timely. Title VII provides that a civil action must be brought within ninety days after the EEOC issues a notice of right to sue. 42 U.S.C. 2000e-5(f)(1). The Sixth Circuit has held that the ninety-day period begins to run five days after the date on which the EEOC mails the notice of right to sue to the claimant. *Hunter v. Stephenson Roofing Co.*, 790 F.2d 472, 475 (6th Cir. 1986); *see also Cook v. Providence Hosp.*, 820 F.2d 176, 179 n.3 (6th Cir. 1987)(stating that there is a presumption that mail is received by the addressee and that the ninety-day time limit begins to run five days after the EEOC mails the notice of right to sue). The EEOC mailed the notice of the right to sue on May 11, 2017, and therefore the ninety-day time limit began to run on May 16, 2017. Fulford filed the instant lawsuit on August 11, 2017, which was within the ninety-day time limit.

be paid for time he did not work, which Volvo discovered through Fulford's timecard punch and security cameras. (*Id.*) Volvo converted Fulford's suspension into a termination upon making a determination that Fulford did falsify a payroll document, thus violating Work Rule 22, which addresses "falsifying, misrepresenting or withholding pertinent facts in the preparation of any records used in the court of Company business." (*Id.*)

On July 5, 2017, Fulford filed another grievance, attached as Exhibit 3, about the alleged violation of Work Rule 22, being accused of timecard fraud, and his termination from employment at Volvo. (Ex. 3 at 12, ECF No. 1-3.) Fulford writes in the grievance that he "has had several issues, complaints, and misunderstanding about reading his pay stub," and "he was not clear if he received payment for the hours he work[ed] that week." (*Id.*)

For relief, Fulford seeks, *inter alia*, that Volvo re-employ him, pay compensatory damages of a minimum of $300,000, and pay back-pay from "June 21, 2017 through the completion of this matter before the court." (Compl. ¶ 11, ECF No. 1.)

II. PROPOSED CONCLUSIONS OF LAW

A. 28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to

proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues.

This report and recommendation will constitute the court's screening. The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

B. <u>Standard of Review for Failure to State a Claim</u>

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual

allegations as true" to determine whether they plausibly suggest an entitlement to relief.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).  However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (internal quotation marks omitted).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant

to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C.  Fulford's Title VII Race-Discrimination Claim

Fulford alleges that Volvo discriminated against him based on his race, African-American. (Compl. ¶¶ 1-2, ECF No. 1.) Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). The essential elements of a Title VII race-discrimination claim are: (1) that the plaintiff is a member of a protected group; (2) that he was subjected to an adverse employment decision; (3) that he was qualified for the position; and (4) that either similarly situated nonprotected

employees were treated more favorably or he was replaced by someone outside his protected class.  *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010).

The factual allegations in Fulford's complaint are insufficient for the court to infer that all the essential elements of a race-discrimination claim against Volvo are satisfied.  As to the first prong, Fulford states in his complaint that he is African-American, thus he is a member of a protected class.  (Compl. ¶ 2, ECF No. 1.)  As to the second prong, Fulford alleges that he suffered adverse employment actions, which included being issued a five-day suspension for the gap-time violation and being terminated from employment at Volvo.  (*Id*. ¶ 8; Ex. 1, ECF No. 1-1.)  As to the third prong, Fulford does not allege any facts that would indicate his qualifications to be a warehouse worker changed during the course of his employment at Volvo.

As to the fourth prong, Fulford neither alleges any facts in his complaint that any nonprotected employee was treated more favorably than he was or that any white individual replaced him. Fulford mentions his co-worker Faukner when detailing the gap-time incident that led to Fulford's suspension, but Fulford does not allege any facts regarding how Volvo treated Faukner in that incident.  (Compl. ¶ 9(f), ECF No. 1.)  Fulford also mentions his EEOC charge that his co-worker Keith "received overtime

9

[pay] and [he] did not." (*Id.* ¶ 9(h).) Even inferring that Faukner and Keith were treated more favorably, they are both African-American, thus, they are both members of a protected group. (*Id.* ¶¶ 9(f), (i).) Additionally, Fulford does not allege any facts about whether he was replaced by someone outside his protected class. Because Fulford has not alleged facts in support of the fourth prong, it is recommended that Fulford's Title VII race-discrimination claim be dismissed.

D.  Fulford's Retaliation Claim Against Volvo

Fulford alleges that Volvo retaliated against him for engaging in protected activity. (*Id.* ¶ 1.) The essential elements of a Title VII retaliation claim are: (1) that a plaintiff acted in a manner protected by Title VII; (2) that the defendant knew of this exercise of protected activity; (3) that the defendant subsequently took an adverse action against him; and (4) the adverse action had a causal connection to the protected activity. *Lundy v. Gen. Motors Corp.*, 101 F. App'x 68, 73 (6th Cir. 2004). There are two types of "protected activity" for purposes of a Title VII retaliation claim: (1) "oppos[ing] any practice made an unlawful employment practice" by Title VII, and (2) making a charge, testifying, assisting, or participating in an "investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). 42 U.S.C. § 2000e-3(a). Additionally, in regards to the fourth prong, the Sixth

Circuit in *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) explained:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Id.* at 525. "[C]ases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Parnell v. West*, 114 F.3d 1188, at *3 n.1 (6th Cir. 1997)(listing a number of cases that support this proposition).

The factual allegations in Fulford's complaint are insufficient for the court to infer that all the essential elements of a retaliation claim against Volvo are satisfied. It appears that Fulford satisfies the second, third, and fourth prongs. Volvo was aware of Fulford's internal complaints and grievances and Fulford was suspended and subsequently terminated from employment at Volvo. (Compl. ¶¶ 9(j), 9(bb), ECF No. 1.) As to causation, Fulford was suspended on April 27, 2017, which was three days after he filed an internal complaint on April 24, 2017. (Id. ¶ 9(d); Ex. 3 at 5, 11, ECF No. 1-3.) Also, Fulford was terminated from employment at Volvo within two months from

11

that gap-time violation suspension on June 21, 2017. (Compl. ¶ 9(bb), ECF No. 1.)

Nevertheless, Fulford's Title VII retaliation claim fails because Fulford has not alleged sufficient facts to satisfy the first prong of his claim. Fulford alleges in his complaint that Volvo retaliated against him for engaging in protected activity, which Fulford describes in his complaint to the EEOC as "complaining" and "filing a grievance." (*Id*. ¶ 9(bb); Ex. 1, ECF No. 1-1.)[3] Fulford states that he filed an internal complaint against Volvo's management and Buckenham on April 24, 2017. (Compl. ¶ 9(d), ECF No. 1.) In the internal complaint, Fulford complains about Buckenham's statement that Fulford was disrespecting him and about the enforcement of the gap-time policy. (Ex. 1, ECF No. 1-1.) Fulford does not allege facts explaining why Buckenham informed Fulford that he was disrespecting him that fall within the purview of Title VII, which would include race, color, religion, sex and national origin. 42 U.S.C. § 2000e-2. Similarly, in complaining about the enforcement of the gap-time policy, Fulford was not opposing a practice made unlawful by Title VII.

Fulford also filed a grievance on May 5, 2017, about his five-day suspension for the gap-time violation. (Ex. 3 at 11,

---

[3]Fulford does not allege that Volvo retaliated against him for filing a complaint with the EEOC.

12

ECF No. 1-3.)  Fulford states in the grievance that he thought the five-day "suspension was in violation of the Union Agreement in that it was no[t] written or spelled out in the contract." (Compl. ¶ 9(kk), ECF No. 1.)  Even inferring that the five-day suspension was in violation of the Union Agreement, this breach of contract is not a practice made unlawful by Title VII. Fulford fails to allege any facts that indicate he opposed any practice made unlawful by Title VII, and, therefore, he does not satisfy prong one of his Title VII retaliation claim.

### III. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Fulford's complaint be dismissed *sua sponte* in its entirety under 28 U.S.C § 1915(e)(2)(B)(ii).

Respectfully submitted this 18th day of September, 2017.


s/Diane K. Vescovo_____
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE


NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.